UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DEBORAH SOLOMON,                                  :
                                                  :
                              Petitioner,         :
                                                  :                01 Civ. 5856 (HB)
        - against -                               :
                                                  :                <u>OPINION & ORDER</u>
JO ANNE B. BARNHART, Commissioner, Social         :
Security Administration,                          :
                                                  :
                              Respondent.         :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:[1]**

On August 22, 2006, Deborah Solomon ("Solomon" or "Plaintiff"), filed this action requesting that this Court reverse the final decision of the Commissioner of Social Security ("Commissioner") and find that the Plaintiff is entitled to disability benefits. The Plaintiff filed a motion for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and the Commissioner filed a cross-motion. For the reasons set forth below, Plaintiff's motion is GRANTED and the Commissioner's cross-motion is DENIED. The matter is reversed and remanded to the Commissioner for a calculation of disability benefits.

## I.  PROCEDURAL HISTORY

On May 19, 1999, Solomon filed an application for Supplemental Security Income ("SSI") disability benefits. The application was denied initially at the local Social Security office on July 27, 1999, administrative transcript ("Tr.") at 21-23, and the denial was upheld on reconsideration by the Social Security Administration ("SSA") on January 23, 2000. Tr. at 29-30. Solomon requested a hearing before an Administrative Law Judge ("ALJ") that was held on November 8, 2000. On November 29, 2000, ALJ Katherine C. Edgell issued a decision that found that Plaintiff was not disabled under the Social Security Act and thus ineligible for SSI benefits. Solomon appealed to the Appeals Council and on June 18, 2001, her request for review of the ALJ's decision was denied. On June 27, 2001, Plaintiff commenced a civil action in the United States District Court, Southern District of New York. Tr. at 365-66. The Honorable John Martin remanded the case back to the Commissioner for further administrative proceedings

---

[1] Jessica Peña, a Fall 2006 intern in my Chambers and a second-year law student at New York Law School, provided substantial assistance in the research for this Opinion.

1

because he found that ALJ Edgell's conclusion that Solomon was not disabled was not supported by substantial evidence. Id.

Upon remand, the Appeals Council directed the ALJ to do the following: 1) re-contact Plaintiff's treating physician to obtain updated treatment records, a medical source statement and clarification with regard to the severity of Solomon's impairments, 2) re-evaluate Solomon's residual functional capacity and accord controlling weight to the treating physician's opinion as directed by 20 C.F.R. § 404.1527, and 3) obtain evidence from a vocational expert to clarify the effect of Solomon's limitations on her ability to perform her past relevant work. Tr. at 369. The case was again assigned to ALJ Edgell, who presided over the original matter.

On October 10, 2003, ALJ Edgell reheard the case *de novo*. Tr. at 319-36. Both Plaintiff and a vocational expert testified at the hearing. Tr. at 347-64. On November 28, 2003, the ALJ found that the Plaintiff was not disabled under the Social Security Act. Tr. at 310-18. Solomon appealed to the Appeals Council and on October 25, 2005, her request for review was denied. Tr. at 262-63. Plaintiff again requested review of this decision pursuant to sentence six of 42 U.S.C. § 405(g). This case was re-assigned to me on August 22, 2006 due to Judge Martin's resignation.

## II. BACKGROUND

Deborah R. Solomon, born on November 8, 1944 and 54 years old at the time she filed for disability benefits, completed high school and was employed as a secretary from 1984 through 1997.[2]  6/3/99 Disability Report Adult, Tr. at 79. As a secretary, her duties included typing, maintenance of the work calendar, answering the telephone, and filing. Solomon left work on December 31, 1997 due to health reasons and filed an application for disability benefits on May 19, 1999.

### A. Medical Evidence

### 1. Treating Physicians

In 1992, Solomon experienced a severe and prolonged general viral infection that caused weakness and chronic fatigue. 06/17/98 Letter from Solomon Lando, MD, Tr. at 131. Plaintiff returned to work after 11 months but had a relapse in December 1997. Tr. at 226. She has not worked since.

---

[2] From 1984 to 1997 Solomon worked as a secretary for temporary agencies, as a medical transcriptionist for Mt. Sinai Hospital, and as a legal secretary at Rogers & Wells.

2

Plaintiff's long-time treating physician, Dr. Solomon Lando, diagnosed her with Chronic Fatigue Syndrome ("CFS") based on her persistent symptoms of migratory aches and pains, periods of deep exhaustion and cervical gland pain. According to the Centers for Disease Control ("CDC") definition (which has been adopted by the Social Security Administration), CFS is a chronic condition that is "characterized in part by prolonged fatigue that lasts 6 months or more and that results in a substantial reduction in previous levels of occupational, educational, social, or personal activities." Social Security Ruling 99-2p, Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome, 1999 WL 271569 at *1 (S.S.A. Apr. 30, 1999). Dr. Lando concluded that as of June 17, 1998, Solomon was disabled and unable to work because her prognosis for improvement was poor. Tr. at 131.

Solomon first saw Dr. Susan Levine, a CFS specialist, for treatment in May 2000. Solomon reported severe exhaustion, sore throat, low-grade fevers, diffuse musculoskeletal pain, sleep disturbances and cognitive problems. Tr. at 431. The physical exam showed evidence of muscular atrophy. Id. Solomon's lab work was positive for prior exposure to EBV, as well as to Human Herpes Virus 6, agents strongly associated with CFS. Id. Levine completed a medical source statement on October 2, 2003 with respect to the Plaintiff's ability to perform work-related activities and concluded that Solomon cannot stand for two hours nor sit for six hours in an eight hour workday, cannot carry 10 pounds, and is unable to climb, balance, kneel, crouch or crawl due to her diminished muscle strength. Tr. at 467-69. Furthermore, Solomon's cognitive problems prevent her from reading, concentrating and impede her short-term memory. Tr. at 431. Dr. Levine placed restrictions on Solomon's activities and concluded that Solomon is completely disabled from fibromyalgia and CFS. Tr. at 431-32.

*2. Consulting Physicians*

Dr. Thomas King, a physician at Good Samaritan Hospital, examined Solomon on June 25, 1999 at the request of the SSA. Dr. King's physical exam revealed that Solomon could walk without any assistive device and was able to climb off and on the examination table without assistance. Tr. at 116. He found that Solomon should have no limitations with respect to sitting or walking for moderate distances although lifting, carrying, pulling and pushing heavy objects would be moderately limited. Id. He concluded that Plaintiff had a history of chronic fatigue syndrome but showed improvement from her relapse in December 1997 and the Plaintiff's prognosis was "fair to good with continued supportive care." Id.

A physician from the New York State Disability Determination Service (whose name is illegible in the record) reviewed the medical record on July 22, 1999 and filled out a "Physical Residual Functional Capacity Assessment." He concluded that the Plaintiff suffered from Chronic Fatigue Syndrome and was able to occasionally lift 10 pounds, stand and/or walk for at least 2 hours and sit for about 6 hours in an 8 hour workday. Tr. at 219. No other limitations are reported and the report noted that although there are treating physician statements in the file, the conclusions in his assessment do not differ significantly from those statements. Tr. at 224. The assessment was affirmed by New York State Department of Social Services medical consultant, Dr. Well. Tr. at 225.

Dr. William Lathan, an internal medicine specialist, also examined Solomon in May 2003 at the request of the SSA.[3] Tr. at 459-64. Dr. Lathan noted that Solomon had a normal gait and stance, needed no assistance climbing on and off the examining table or changing for the exam, and was able to rise from the chair without difficulty. Tr. at 460. She could squat fully but had difficulty walking on her heels and toes. Id. He concluded Solomon had a "history of chronic fatigue syndrome" with a "guarded prognosis." Tr. at 461-62. Dr. Lathan also noted that Solomon is moderately restricted from activities that require strenuous exertion. Tr. at 462.

Last, at the direction of the Appeals Council, Donald Slive ("Slive"), a vocational expert, testified that Solomon's past work qualified as secretarial duties as defined by the Department of Labor. Tr. at 334. Slive stated that if Solomon could perform a full range of sedentary work, then she could perform her past relevant work. However, if she could not perform a full range of sedentary work, then she is not able to perform her past relevant work and is unemployable in the national economy. Id. He reached no conclusion with respect to whether Solomon is able to perform her past work as a secretary, or perform the full range of sedentary work.

## B. *Plaintiff's Testimony*

During the most recent hearing, Plaintiff testified that she suffers from flu-like symptoms and that frequently, when she attempts any activity, the back of her hands and sides of her neck hurt. Tr. at 329. Further, her throat feels sore, her eyes begin to burn and her muscles weaken, all of which make it extremely difficult to do anything. Id. She testified that her doctor instructs her to stop all activity and rest when these symptoms begin. Id.

---

[3] Although Plaintiff's disability insured status ended on December 31, 2002, medical evidence submitted after that date was considered by the ALJ and will be considered here since Plaintiff testified that her condition has not changed since 2000.

Solomon also reported that she does not maintain a regular schedule and struggles to get washed and dressed every day.  Tr. at 330.  In the morning and throughout the day she suffers from joint pain that makes it difficult for her to get up or stay upright and also limits her strength.  Tr. at 329-30.  She relies on the assistance of others to perform household chores and to prepare her meals.  Tr. at 332.

Her condition has not improved in the last three years since the first hearing.  Tr. at 333.

## C.  Administrative Proceedings -- ALJ's Decision on Remand

On remand, Judge Edgell found that Solomon had not engaged in any substantial gainful activity since the alleged onset of her disability on December 31, 1997 and she meets the disability insured status requirements of the Social Security Act from that date through December 31, 2002.  She concluded that although Solomon's chronic fatigue syndrome is a "severe" impairment, there was no support for a disability finding.  Tr. at 315.  In short, Judge Edgell found that despite the fact that Solomon suffers from chronic fatigue syndrome, she still retained the ability to engage in sedentary work (e.g. as a secretary).  Id.

ALJ Edgell rejected the medical conclusions of both Dr. Levine and Dr. Lando, named as treating sources in the record.  Tr. at 316.  Judge Edgell did not accord great weight to Dr. Levine's medical findings because she found that the limitations reported in Dr. Levine's assessment were based on the Plaintiff's subjective complaints (which she did not find "totally credible"), rather than on personal observation of the Plaintiff.  Id.  Further, ALJ Egdell expressed doubt as to whether Dr. Levine should be considered a treating physician based on Solomon's infrequent medical visits.  Id.  With respect to Dr. Lando, Judge Egdell did not accord great weight to his medical opinion because the medical assessment in the record was unsigned and given at a time when he was in semi-retirement.  Tr. at 317.

## III.  STANDARD OF REVIEW

A civil action in federal court that challenges the denial of SSI benefits can be filed after "any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party."  42 U.S.C. § 405(g); See also 42 U.S.C. § 1383(c)(B)(3).  When the Appeals Council denied Plaintiff's request for review on October 25, 2005, the ALJ's November 28, 2003 decision became the final decision on Solomon's SSI disability application.  See Notice of Appeals Council Action, Tr. at 262.

When reviewing an ALJ's denial of SSI benefits, courts do not perform a *de novo* review. Instead, the court must undergo a two-step inquiry and can only set aside a determination that is based on legal error or is not supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). In other words, the court must determine whether the ALJ applied the appropriate legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. Mimms v. Heckeler, 750 F.2d 180, 185 (2d Cir. 1984); See also Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g). Further, even if the administrative record supports disparate findings in favor of both parties, the court must accept the ALJ's factual determinations. Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997).

The burden is on the claimant to prove disability throughout the period for which benefits are sought. Schauer v. Schweiker, 675 F.2d 55, 59 (2d Cir. 1982). However, if the claimant demonstrates that her impairment is severe and renders her unable to perform her past work, the burden shifts to the Commissioner to prove that there is other work in the national economy that the claimant could perform. Id; Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998).

## IV.   DISCUSSION

The Social Security Act defines disability in relevant part as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA has established a five-step process to determine whether a claimant is disabled.

First, the Commissioner must consider whether the claimant is engaged in substantial gainful activity. If the claimant is engaged in such activity, then she is not considered disabled. However, if the claimant is not engaged in substantial gainful activity, the second inquiry is whether the claimant suffers from an impairment that severely limits her physical or mental ability to do basic work activities. Thereafter, the Commissioner must determine during the third step, based solely on objective medical evidence, whether the claimant's impairment is listed in Appendix 1 of the regulations. If the claimant's impairment is listed in the Appendix, the

Commissioner will consider the individual disabled. However, if the claimant's impairment is not listed, then the Commissioner must determine, at the fourth step of the inquiry, whether the claimant has the residual functional capacity to perform her past work despite her severe impairment. If the claimant is unable to perform her past work, then the Commissioner must determine, as the final step in the inquiry, whether there is other work in the national economy that the claimant could perform. 20 C.F.R. § 404.1520.

It is undisputed that the Plaintiff is not engaged in substantial gainful activity and suffers from chronic fatigue syndrome, which is a severe impairment. However, while ALJ Egdell found that Solomon has the residual functional capacity to perform as a secretary, Plaintiff contends that conclusion is not supported by substantial evidence. I agree.

### A. *ALJ's Assessment of the Medical Evidence -- Treating Physician Rule*

The SSA regulations require that the ALJ give controlling weight to the treating physician's opinion if that opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2); See also Havas v. Bowen, 804 F.2d 783, 785 (2d Cir. 1986). Both treating physicians, Dr. Lando and Dr. Levine, found that Solomon tested positive for Epstein-Barr Virus ("EBV"), which is a medically acceptable diagnostic technique to test for CFS. Social Security Ruling 99-2p, 1999 WL 271569 at *3 (S.S.A). However, because the medical sources reach different conclusions with respect to the severity of Plaintiff's illness, ALJ Egdell did not err when she did not accord the opinion of the treating physicians' controlling weight.

In the case where a treating physician's opinion is not given controlling weight, various factors should be considered when evaluating a medical opinion. These factors include, *inter alia*, the length, extent, nature, and frequency of the treatment relationship as well as whether the medical opinion is from a specialist with respect to medical issues related to his or her area of expertise. 20 C.F.R. § 404.1527(d). In this case, Plaintiff argues that the ALJ committed legal error when she failed to afford great weight to Dr. Levine's opinion that Plaintiff's symptoms were sufficiently severe to render her disabled.

As a preliminary matter, contrary to ALJ Egdell's conclusion, Dr. Levine satisfies the definition of a treating physician. The Code of Federal Regulations defines "treating source" in relevant part as follows:

7

> *Treating source* means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. . . . We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. § 404.1502. Dr. Levine evaluated and treated Solomon on an ongoing basis, two and a half years. Tr. at 431. There is no reason to believe that she was not familiar with Plaintiff's condition during this time. Contrary to Defendant's contention, it is of little significance that Dr. Levine only evaluated the Plaintiff on four occasions over this time period.[4] Given the untreatable nature of the condition, there would be little reason for Solomon to visit Dr. Levine frequently. As Plaintiff testified,

> Q: And does she prescribe you any treatment?
>
> A: She didn't – she said that analgesics – I take something for the pain and there isn't anything she does for me in her office.
>
> Q: So you take aspirin?
>
> A: Aspirin helps.

Tr. at 330.

Further, not only did Dr. Levine treat the Plaintiff for two and a half years, Dr. Levine is a Board certified specialist in internal medicine and infectious diseases and has extensive experience in the field of CFS. Tr. at 441-43. No other doctor that evaluated the Plaintiff possessed these credentials. Despite the above, ALJ Egdell did not accord Dr. Levine's opinion great weight and instead credited the opinion of non-specialist doctors who evaluated the Plaintiff once at the request of the SSA. While I may not agree, this is not legal error.

## B. Credibility of Plaintiff's Testimony

At the final two stages of the disability inquiry, the ALJ considers the individual's residual functional capacity, along with his or her age, education, and work experience to determine whether the individual can engage in their past work or in any other substantial gainful

---

[4] Plaintiff saw Dr. Levine on May 3, 2000, March 26, 2001, January 2002, and October 21, 2002. Tr. at 226 -27, 401, 430, 444.

8

work which exists in the national economy. Social Security Ruling 83-10. The ALJ found that "the claimant's allegations regarding her limitations [were] not totally credible" and concluded that the Plaintiff is able to lift light objects, stand and walk for limited periods of time and do those things inherent in work of a sedentary nature (which includes her past work as a secretary). Tr. at 318. For those reasons, Plaintiff is not disabled.

According to SSA regulations, sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). The regulation sets forth that sedentary work generally involves no more than two hours of standing or walking as well as six hours of sitting in an eight hour workday. Social Security Ruling 83-10.

ALJ Egdell found Plaintiff's self-reported symptoms incredible. However, given the nature of CFS, an individual's testimony with respect to his or her symptoms assumes heightened significance. See, e.g., Coyle v. Apfel, 66 F.Supp.2d 368, 376 (internal citation omitted) ("In fibromyalgia cases, 'the credibility of the claimant's testimony regarding her symptoms takes on 'substantially increased' significance in the ALJ's evaluation of the evidence' because physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion."). As explained by Dr. Levine, CFS specialist,

> There are not 'clinical findings' in this illness per se. The diagnosis is based upon the *patient's reporting of his or her subjective symptoms* and the laboratory exclusion of other disorders that can also cause fatigue, including thyroid diseases, lupus and lyme diseases.

Tr. at 440 (emphasis added). I find that ALJ Egdell's decision to disregard Plaintiff's self-reported symptoms was not adequately supported by the evidence.

Pursuant to Social Security Ruling 96-7p, an ALJ is not permitted to disregard an individual's reports of pain or other symptoms that impact his or her ability to work simply because there is a lack of objective medical evidence that substantiates their statements. See also 20 C.F.R. § 404.1529(c)(4). This is particularly important in the case of CFS, since the CDC notes that there may be no physical signs that identify the disease.

It is undisputed that Solomon suffers from CFS. To receive that diagnosis, a patient must have severe fatigue that lasts for six months or more and four or more of the following

9

symptoms: 1) substantial impairment in short-term memory or concentration; 2) sore throat; 3) tender lymph nodes; 4) muscle pain; 5) multi-joint pain without swelling or redness; 6) headaches of a new type, pattern or severity; 7) unrefreshing sleep; and/or 8) post-exertional malaise lasting more than 24 hours.  Social Security Ruling 99-2p, at 1-2.  Although it is undisputed that Solomon suffers from CFS, the degree of severity of her illness is contested.

When asked at the October 2003 hearing to describe the pain she feels, Plaintiff testified as follows:

> Usually when I'm trying to do something, I find that the backs of my hands will start to hurt first and the sides of my neck will begin to hurt. And my throat, which is red all the time, will start to feel more sore. And my eyes will start to burn and then I feel the muscles losing their strength.  And the pain in the arms and the backs the hands starts going further and further up the arms.
>
> . . .
>
> When I wake up in the morning, I'm usually quite stiff and there's joint pain and very limited strength.  Also, it's extremely difficult to get up or to stay upright.  And I can find that throughout the day also.

Tr. at 329-30.  This description of her symptoms is consistent with her testimony three years prior during the November 2000 hearing, tr. at 355, as well as with all the medical evaluations of both treating and consultative physicians in the record.  <u>See, e.g.</u>, tr. at 115, 431, 459.  All four doctors that examined the Plaintiff – Dr. Lando, Dr. Levine, Dr. Lathan, and Dr. King – report that Plaintiff complained of the same symptoms – muscle and joint discomfort, severe weaknesss, and an inability to complete daily tasks such as food preparation and household chores without assistance.  If Plaintiff's testimony is credited, it supports the conclusion of both treating physicians that Solomon is unable to work.

ALJ Egdell discounted Plaintiff's testimony for two reasons.  First, she found that Solomon's medical record did not reveal physical abnormalities (e.g. joint inflammation or disuse atrophy) that might be expected to arise as a result of the fatigue and pain Plaintiff describes in her muscles and joints.  Although ALJ Egdell misconstrues the signs of CFS since neither joint inflammation nor disuse atrophy are even generally recognized symptoms of the disease, the medical record also contradicts ALJ Egdell's conclusion.

Dr. Levine reported that a physical exam revealed that the Plaintiff had joint pain, "marked tenderness in the paracervical muscles, shoulders, upper back and hips, as well as trigger points along the medial scapula and trapezius muscles bilaterally." Tr. at 227. Further, when Dr. Levine examined the Plaintiff in October 2002, Solomon was primarily homebound and she noted evidence of disuse atrophy, "wasting of lower extremities and of bilateral thenar eminences." Tr. at 430. Although unnecessary, this objective medical evidence supports Plaintiff's description of her CFS symptoms recounted above.

Second, the ALJ found that Solomon appears cognitively aware because she is able to manage her finances and provide documents and argument that logically presents her case. Tr. at 316. This is not enough to demonstrate that Solomon can perform the full range of sedentary work for an eight hour workday. As Solomon testified at the most recent hearing, she needs assistance to perform basic tasks. For example, she relies on others to prepare her meals, although she is able to cook if the meal is easily prepared and done in stages.

> A: I must rely on help from other people. I can't manage to really feed myself every day. I can't do the preparations. I can't make a whole meal.
>
> Q [ALJ]: Do you do any of it or no?
>
> A: I can – it's not regular. I can't say that every day I do such-and-such, but sometimes I have strength. And when I have the strength, then I try and prepare something for myself. But it usually has to be something very light or easy to do. The pot has to be not too heavy and a lot of times I have to do it in stages. . . . It can take me hours sometimes to have a whole meal. Sometimes even when I have prepared foods, sometimes I'll have to lay down in the middle of the meal because serving myself can be very strenuous.

Tr. at 332-33. Nothing in the record, even an ability to ambulate during a physical exam, contradicts any of the Plaintiff's testimony, namely that she is able to perform some activities, sometimes, and is forced to rest if the pain becomes overwhelming. This is the nature of CFS and Solomon should not be penalized for her attempts to lead a normal life, despite her illness.

Although the ALJ's credibility determinations are entitled to deference, they must also be supported by substantial evidence. Here, the ALJ discredited Plaintiff's testimony and relied on the consultative reports of three physicians, none of whom specialized in CFS and one who never even examined the Plaintiff, to conclude that Solomon remains able to work despite her severe impairment. The ALJ's conclusion that Solomon is able to perform the full range of sedentary

11

work is contrary to the weight of the record – Plaintiff's self-reported symptoms, which should receive particular deference given the nature of the illness, as well as the assessment of her two treating physicians. In short, the evidence the ALJ relies upon is not enough to override the medical evidence in the record with respect to the severity of Solomon's illness. Thus, the ALJ's decision that Solomon is not disabled is not supported by substantial evidence.

## V. CONCLUSION

For the reasons above, Plaintiff's motion for judgment on the pleadings is granted and the Defendant's cross motion is denied. Given the prolonged nature of this case (Plaintiff first applied for benefits seven years ago), and the fact that this matter has been remanded for further proceedings once before, this case is reversed and remanded to the Commissioner solely for a calculation of disability benefits. The Clerk of the Court is directed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**December ___, 2006**

_____
U.S.D.J

12